## Bender v. South.

(Decided November 23, 1920.)

### Appeal from Breathitt Circuit Court.

1. Deeds—Description—Construction.—A deed conveying the grantor's undivided half of a tract of land, a coal mine situated thereon, and certain articles of personal property described in the deed and mentioned therein as then in use in the coal mine, cannot be made to include the grantor's half of other articles of personal property on the land not within the description of the personal property mentioned in the deed, nor then in use in the mine.

2. Deeds—Parol Evidence.—In the absence of an allegation of fraud or mistake in the execution of a deed, it cannot be contradicted or its meaning added to or varied by the introduction of parol evidence.

3. Trial—Instructions.—On the face of the pleadings and under the evidence contained in the record of this case, the instruction given by the trial court directing a verdict for the appellee, was not error.

A. H. PATTON and J. B. ADAMSON for appellant.

KASH & BACK for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee, W. T. B. South, recovered in this action a verdict and judgment in the court below against the appellant, W. O. Bender, for $716.00, the agreed value of the former's undivided half of certain mining supplies and other articles of personal property, all set forth in an itemized account filed with and made a part of the petition, in which pleading, as amended, it was substantially alleged that the appellee's undivided half of the property was sold and delivered by him to appellant at the price opposite each item and aggregate amount of the whole, as charged in the account, which the latter promised to pay at once, but did not pay as promised or at all, though demand therefor was repeatedly made of him by appellee. The recovery sought was resisted by the appellant whose original answer merely traversed the averments of the petition, but, as later amended, it alleged by way of further defense:

"That on or about the day of April, 1918, he (appellant) purchased one-half undivided interest in the Panhandle Coal Company, a partnership composed of plaintiff (appellee) and E. O. Bailey, and thereby became the owner of all the interest owned in the said company by the plaintiff, to-wit: a one-half undivided interest, and paid and agreed to pay the sum of $12,500.00, therefor."

By agreement of the parties the affirmative matter of the answer, as amended, was controverted of record. The verdict of the jury in favor of appellee was directed by a peremptory instruction, given by the trial court at the conclusion of all the evidence. That ruling of the court, together with its refusal to sustain the motion and grounds for a new trial filed by the appellant, resulted in this appeal by the latter from the judgment entered upon the verdict.

The only question presented on the appeal for decision by this court is, whether the action of the trial court in directing a verdict for the appellee was error. It appears from the record that for several years prior to April 10, 1919, the appellee and one E. O. Bailey, as equal partners and under the firm or partnership name of "Panhandle Coal Mining Company," were engaged in the business of mining and selling coal on and from a tract of land in Breathitt county owned by the partnership, but that on or about the above date the appellee sold and, by deed in which his wife united, conveyed to the appellant, his interest, which was an undivided half,

in the land, coal mine and mining business, including some personal property appurtenant to the coal mine, mentioned in the deed as then in use; and whether the appellee's half of the personal property, the value of which he was permitted to recover in this case, was included in the sale evidenced by the deed, or was the subject of a separate sale made by appellee to appellant, under a different contract, is the matter here in dispute.

The granting clause of the deed is as follows: ''The parties of the first part (South and wife) has bargained and sold and does hereby convey unto party of the second part (Bender) all his undivided one-half interest in the following described tract of land. . . .''

Then follows the description of the land, the consideration and manner of its payment. The habendum is as follows:

''To have and to hold the same, together with all the appurtenances thereunto belonging, and also mining tools *now used,* blacksmith tools, mining scales and switch, unto party of second part his heirs and assigns forever, and covenants with said party of second part that he will warrant the title to the property hereby conveyed unto the party of the second part and to his heirs and assigns forever.''

It was, in substance, testified by the appellee that his half of the several items of personal property in question was sold by him to the appellant the day after the execution and delivery of the deed carrying into effect the first contract, by a second contract then made between them, whereby the appellant agreed to take and pay for appellee's half of the property at a price, as to each item, equaling one-half its whole value to be thereafter fixed by appellee and E. O. Bailey; and that a few days later he and Bailey did fix the full value of each item of the property, following which appellee made out a statement in writing containing each of such items and opposite the price thereof, at one-half of the whole as fixed by Bailey and himself; and that upon his submitting this written statement to appellant, in approval thereof, he signed his name to it below that of appellee. Appellee further testified, in substance, that although the several items of property in question were purchased by the Panhandle Coal Mining Company for future use in operating its coal mine, none of it had been applied to such use, nor was any of it in use in operating the coal mine at the time appellee's interest in the land, mining and

coal business of the partnership was sold appellant; and that his half interest therein was then reserved and not sold; furthermore, that this reservation was known to appellant, who in the several conversations, except the last, he had with appellee regarding this property, acknowledged his liability for the latter's half thereof; but that in the last conversation appellant for the first time claimed that the appellee's interest in the property passed to him under the deed previously executed.

While the evidence introduced for appellant contradicted in several particulars that of appellee, none of it, not even the individual testimony of appellant, contradicted his testimony respecting the agreement made with him by appellant that he (appellee) and E. O. Bailey should fix the value of the several items of property in controversy in order to arrive at the value of the appellee's half thereof; that such appraisal was duly made, or that the writing containing it was approved by appellant by attaching his signature thereto. It is fairly apparent from appellant's own testimony that no claim was set up by him to appellee's half of the property in controversy under the deed he received of him until the last of the several conversations he had with appellee, in each of which the latter asked him for the payment of the amount claimed for his half thereof; and when in such final conversation appellant denied liability and asserted a right to such half under the deed, appellee at once brought suit against him for his demand.

It was not testified by appellant, or by any witness introduced in his behalf, that at the time he purchased of appellee his half of the land, coal mine and appurtenant property mentioned in the deed, or any other time, there was any express agreement or understanding between them that appellee's half of the property in controversy was to be included in such purchase, or that it was mentioned. It is true Bailey, appellee's former and appellant's present partner in the coal mining business, in testifying as a witness for the latter said, in substance, that he supposed the items of property in controversy were intended to be included in the sale of appellee's interest in the partnership known as the Panhandle Coal Mining Company evidenced by the deed he made the appellant, but he failed to say that he heard or was a witness to any agreement between the parties to that effect. Moreover, the conclusion that there was no such understanding is strongly supported by the fact, shown by the

evidence and admitted by appellant, that after he received the deed conveying him appellee's interest in the property of the Panhandle Coal Mining Company therein described, by agreement between them the latter's interest in the property in controversy was valued by him and Bailey. Why was this necessary if the interest of appellee in this property had already been conveyed by the deed and its value included in the consideration expressed in that instrument?

Manifestly, appellant's contention that the title to appellee's half of the property in question, even if proof of its reservation were wanting, by reason of some custom or usage respecting such sales, was vested in him by the deed from appellee, cannot on the record before us be sustained. As no such custom or usage was pleaded by his answer, it cannot be relied on as a ground of defense to the appellee's action. As appellant's answer alleges neither fraud nor mistake in the deed he received of appellee, his defense to the latter's demands herein must succeed or fail by its terms. The deed must be regarded as complete in itself and we are unable to find anything in its language that includes the conveyance of appellee's half of the personal property sued for. Its language clearly shows what appellee sold appellant and all it conveys the latter, viz.: all the grantor's "undivided one-half interest" in the land therein described, including by its language and as a matter of law, the coal and other minerals upon and under the land; also the appurtenant personal property, consisting of "mining tools," "blacksmith tools," "mining scales and switch," specially mentioned in the habendum clause and therein described as "now used" in the coal mine being operated on the land.

Manifestly, the language of the deed restricts or limits the conveyance to the grantee to such interest as the grantor had in the particular items or articles of personal property specifically named therein and declared to be in use in the mine at the time of the execution of the deed; consequently, as the personal property of the Panhandle Coal Mining Company, one-half the aggregate value of which appellee, as an equal member of that partnership, sued the appellant for in this case, does not come within the description given in the deed from appellee to appellant and was not in use in the mine at the time of the delivery of the deed in question to ap-

pellant, appellee's half thereof was not conveyed him by that instrument.

With this conclusion reached, the further conclusion that the trial court did not err in directing a verdict for appellee, is inevitable. Appellant's testimony admits the sale to him of this property and its possession by him, but claims that the contract of sale is evidenced by the deed he received of appellee and the property conveyed him by the deed. This is not supported by the deed, the language of which clearly shows that it does not embrace or convey the property in controversy and appellant is concluded by its language; hence, in the absence of an allegation of fraud or mistake in its execution, any and all evidence introduced in his behalf tending to contradict the deed or add to its meaning, was incompetent and should have been excluded from the jury. In view of the foregoing facts and the appellant's admission of the correctness of the value given each item of property in controversy by appellee and Bailey, the appellee was entitled under the pleadings to the instrution of the court requiring the jury to return a verdict in his favor for the amount sued for.

A directed verdict is proper when the pleadings or evidence will not support any other verdict. Ill. Central Ry. Co. v. Day, 163 Ky. 357; Cin., N. O. & T. P. Ry. Co. v. Smith's Admr., 168 Ky. 165; W. U. Telegraph Co. v. Smith, 164 Ky. 270.

Judgment affirmed.