66  319
s69  80
69  502

FRANK L. JACKSON, PLAINTIFF IN ERROR, v. THE PENNSYLVANIA RAILROAD COMPANY, DEFENDANT IN ERROR.

Argued November 23, 1900—Decided April 29, 1901.

An accord between the plaintiff and a third person as to the subject-matter of suit, and a satisfaction moving from such third person to the plaintiff, who accepts and retains it, are available in bar of the action if the defendant has either authorized or ratified the settlement.

---

On error to the Supreme Court.

For the plaintiff in error, *James B. Vredenburgh.*

For the defendant in error, *David F. Edwards.*

The opinion of the court was delivered by

ADAMS, J.   The plaintiff, a driver employed by the Adams Express Company, was injured on October 18th, 1899, at the Pennsylvania railroad depot, in Jersey City, while transferring goods from his wagon to a freight car.   He brought suit against the railroad company, and recovered a verdict. Exceptions were taken to the refusal of the trial judge to nonsuit the plaintiff, and to direct a verdict for the defendant, and on these exceptions error has been assigned.   The question of negligence is in the case, but need not be considered, as the defence of accord and satisfaction is decisive.

This defence is presented by a special plea, which alleges that the said grievances, &c., if any such there were, were committed jointly by the defendant and by the Adams Express Company, and that the plaintiff, after the committing of the said alleged grievances, and before the commencement of the suit, did accept and receive from the said Adams Express Company the sum of $30 in full satisfaction and discharge of any and all claims accrued or to accrue in respect of all injury or injurious results, direct or indirect, arising or to arise by reason of the said grievances, and did, by his certain writing of release, acknowledge the receipt of the said $30 in full satisfaction of all such claims, and release unto the said Adams Express Company all claims and demands for damages occasioned by said supposed grievances.   To this plea the plaintiff replied that the trespasses complained of were not committed jointly by the defendant and the Adams Express Company.   In other words, the defendant, by its special plea, invoked the rule that the release of one of two joint trespassers discharges both, and the plaintiff, not denying the payment in satisfaction, and not denying the execution of the release in writing, took issue merely upon the allegation of a joint trespass.

It is plain that there was no joint trespass, for the evidence shows that the Adams Express Company was at the depot by invitation, and not in its own wrong.   The place where the accident occurred had been appointed and set apart by the railroad company for the use of the express company

in delivering goods upon cars owned by or assigned to it. Thither its wagons went every day. The plaintiff was injured while at the accustomed place, at the usual time. Consequently the legal rule invoked by the plea is not available to the defendant. If this court could not look beyond the pleadings, it would be necessary to dismiss the defence of accord and satisfaction with the remark that the proof does not support the plea. But our inquiry is not restricted to the narrow issue framed by the special plea and replication. The liberal policy declared by our Practice act not merely empowers the court, but makes it its duty, to determine the real merits of the controversy. The payment and release are admitted, since they are not denied, and they are therefore in the case for whatever, in any aspect of the proof, they may be worth.

The defendant, to support the plea of accord and satisfaction, proved the facts hereinafter stated. At the time of the accident there was in force a written agreement between the Pennsylvania Railroad Company and the Adams Express Company providing that the express business transported on the trains of the railroad company should be done by the express company under the terms of said agreement. Among these terms are the following: That the express company should pay the railroad company for the transportation of its express business forty-eight per centum of the gross receipts therefrom, of which eight per centum should be compensation to the railroad company for furnishing to the express company free transportation over all ferries and lighters, the necessary switching service for express cars on its tracks, the permitting of said cars to pass on foreign lines, and the use of telegraph and telephone lines controlled by the railroad company; also that, under certain circumstances, the express company would be permitted to occupy space free of charge in stations already constructed as long as the same should not be needed for other railway purposes. The tenth paragraph of this agreement binds the express company "To assume all risk of loss or damage that may arise out of or result from its operations under this agreement, and to save and hold

harmless the railroad company against the same, and especially to protect the railroad company against claims that may be made upon it for loss or damage either to the employes of the express company or the property in its charge, whether the same may occur through the gross negligence of the railroad company or its employes, or otherwise."

This agreement, it will be perceived, made the express company primarily liable, as between it and the railroad company, for any damage for which the plaintiff might have a right of action against the railroad company arising out of the accident before mentioned. The plaintiff testified that he had no knowledge of the existence of this agreement.

The accident wholly incapacitated the plaintiff for about eight weeks. He then again went to work for the express company, but could do only light duty. In February, 1900, he quit service with the express company. His account of the matter is that he was discharged because he brought suit against the railroad company.

The plaintiff's wages had been $60 per month before the accident, and these wages were continued to him to the end of his employment, and were regularly paid every two weeks. The accident, as above mentioned, took place on October 18th, 1899. There was due to the plaintiff on the 1st day of November, 1899, at the rate of $60 per month, the sum of $25.16, calculated from the date of the accident. This amount was paid him, and he signed and delivered to the express company a document, of which the following is a copy:

"Received of Adams Express Company, this fourth day of November, 1899, the sum of Twenty-five 16/100 Dollars in full satisfaction and discharge of all claims accrued or to accrue in respect of all injuries or injurious results, direct or indirect, arising or to arise from an accident sustained by me on or about the 18th day of October, 1899, while in the employment of the above.

"$25.16."

On the 30th day of November another payment of $30, covering the latter half of that month, was made to the plaintiff, who thereupon signed and delivered to the express

company another document, of which the following is a copy (this is the "writing of release" on which the special plea is founded):

"Received of Adams Express Company, this thirtieth day of November, 1899, the sum of Thirty 00/100 Dollars in full satisfaction and discharge of all claims accrued or to accrue in respect of all injuries or injurious results, direct or indirect, arising or to arise from an accident sustained by me on or about the 18th day of October, 1899, while in the employment of the above.

"$30.00."

The case is free from any charge of fraud and from any suggestion that the plaintiff did not comprehend the documents that he signed. It is to be observed also that inasmuch as the plaintiff had received no injury from the express company, it must be true that the "claims accrued or to accrue," referred to in these documents, mean claims that the plaintiff might assert against the Pennsylvania Railroad Company. Another preliminary question of importance is whether there was a new consideration to support the accord and satisfaction. If not, this defence fails. It is true that the plaintiff remained in the service and on the pay-roll of the express company from the date of the accident until early in February, 1900, and that in the meantime he got nothing but his wages. On the other hand, he was totally disabled for about eight weeks, and never was able to do full work, notwithstanding which the express company continued to him full pay. Fairly regarded, the arrangement evidently was that, at least until further notice, he should have full pay, without regard to his capacity to earn it. This formed a new and valid consideration sufficient to support an accord and satisfaction.

It remains to consider the real question in controversy, which is as to the effect of an accord and satisfaction entered into, not with the person against whom a claim is asserted, but with a third person. In this case the third person is a corporation, which, between itself and the person against whom the claim is asserted, has made itself primarily liable by an agreement undisclosed to the claimant.

An early authority as to accord and satisfaction with a third person is *Grymes* v. *Blofield, Cro. Eliz.* 541, which reads as follows:

"Debt Upon an Obligation of 20 pounds. The Defendant pleads, That J. S. Surrendered a Copy-hold Tenement to the use of the Plaintiff in satisfaction of that 20 pounds, which the Plaintiff accepted, &c. And is was thereupon demurred. Popham, and Gawdy held it to be no plea: for J. S. is a meer stranger, and in sort privy to the Condition of the Obligation: and therefore satisfaction given by him is not good. *Vide* 36 *H.* 6. *Barr* 166. 7 *H.* 4, *pl.* 31. Afterwards, *Pasch.* 31 *Eliz.* by Popham; and Clench, *caeteris justiciariis absentibus,* it was adjudged for the Plaintiff."

In *Edgcombe* v. *Rodd,* 1 *Smith* 515, reported also in 5 *East* 294, the case of Grymes *v.* Blofield was discussed, Mr. Justice Lawrence remarking that it was quite unreasonable to doubt the authority of that case. In *Jones* v. *Broadhurst,* 9 *C. B.* 193, Mr. Justice Cresswell commented upon Grymes *v.* Blofield, and pointed out its inconsistency with an earlier case, which is thus stated in *Fitz. Abr., tit. "Barre," pl.* 166 (*Hilary,* 36 *H. of L.* 6) : "If a stranger doth trespass to me, and one of his relations, or any other, gives anything to me for the same trespass, to which I agree, the stranger shall have advantage of that to bar me; for, if I be satisfied, it is not reason that I be again satisfied. *Quod tota curia concessit.*" A course of decision ensued, which Baron Parke summed up in *Simpson* v. *Eggington,* 10 *Exch.* 844, in the following words:

"The general rule as to payment or satisfaction by a third person, not himself liable as a co-contractor or otherwise, has been fully considered in the cases of *Jones* v. *Broadhurst,* 9 *C. B.* 193; *Belshaw* v. *Bush,* 11 *C. B.* 191, and *James* v. *Isaacs,* 22 *L. J., C. P.* 73; and the result appears to be that it is not sufficient to discharge a debtor unless it is made by the third person, as agent *for and on account* of the debtor, and with his prior authority or subsequent ratification. In the first of these cases, in an elaborate judgment delivered by Mr. Justice Cresswell, the old authorities are cited, and the

question whether an unauthorized payment by and acceptance in satisfaction from a stranger is a good plea in bar is left undecided. It was not necessary for the decision of that case. In Belshaw *v.* Bush, it was decided that a payment by a stranger considered to be *for* the defendant and *on his account,* and subsequently *ratified by him,* is a good payment; and in the last case of James *v.* Isaacs, a satisfaction from a stranger, without the authority, prior or subsequent, of the defendant, was held to be bad. We consider therefore the law as fully settled by these cases."

The English cases justify the observation of Mr. Justice Wales, in *Snyder* v. *Pharo, 25 Fed. Rep.* 398 (at *p.* 401), that none of the later decisions adhere with any strictness to the rule laid down in Grymes *v.* Blofield, and that it is evident, from an examination of them, that a plea of satisfaction by a stranger, when properly averred, would be held good.

In the United States the case of Grymes *v.* Blofield has been, to some extent, followed, notably in the State of New York. The earliest case is *Clow* v. *Borst, 6 Johns.* 37, which, like Grymes *v.* Blofield, arose upon a point of pleading. It was there held, on demurrer, in an action of covenant, that a plea of the acceptance of a satisfaction by the plaintiff from a third person or stranger is not good. This case was followed in *Daniels* v. *Hallenbeck,* 19 *Wend.* 408; *Bleakley* v. *White,* 4 *Paige* 654; *Atlantic Dock Co.,' &c.,* v. *New York,* 53 *N. Y.* 64, and *Muller* v. *Eno,* 14 *Id.* 597, 605. To the same effect is *Armstrong* v. *School District No.* 3, 28 *Mo. App.* 169. These cases are not, on the whole, inconsistent with the idea that this defence may be made if it be properly pleaded.

The tendency of the American decisions is strongly in favor of supporting a satisfaction moving from a third person, when such person either had authority to make it or the act was followed by ratification and the article received in satisfaction was retained. In *Leavitt* v. *Morrow, 6 Ohio* 71; *S. C., 67 Am. Dec.* 334, the Supreme Court of Ohio (Chief Justice Bartley reading the opinion) held, after a vigorous discussion of the doctrine, that an accord with and satisfaction coming

from a stranger having no pecuniary interest in the subject-matter are, if accepted in discharge of the debt, a perfect defence to a subsequent action against the debtor. Another valuable case is *Snyder* v. *Pharo, 25 Fed. Rep.* 398, 401, where, in an opinion written by Mr. Justice Wales, all the leading cases are cited. The head-note reads as follows: "Satisfaction of a debt by the hands of a stranger is good when made by the authority of or subsequently ratified by the defendant. The fact of pleading it will be sufficient evidence of ratification." In *Beach Mod. L. Cont.* 542, it is said that an accord with and satisfaction moving from a stranger or person having no, pecuniary interest in the subject-matter, if accepted in discharge of the debt, constitute a good defence to an action to enforce the liability against the debtor. In the note to *Cumber* v. *Wane,* 1 *Sm. Lead. Cas* (*9th ed.*) 624, the same conclusion is reached. The reason of the rule is simple. On the one hand, no party can be deprived of a right by mere payment by a volunteer. On the other hand, since a party is entitled to only one satisfaction, his acknowledgment that he has received it, and his retention of it, operate to extinguish his right. As was said in *Hawshaw* v. *Rawlings,* 1 *Str.* 23: "Although payment by a stranger be not a legal discharge, yet acceptance in satisfaction is." In 2 *Pars. Cont.* (*8th ed.*) 688, the same rule is stated, with the remark that the defence is clearly available when the debtor and the stranger are principal and agent. In 2 *Chit. Cont.* (*11th ed.*) 1133, this is said to be the correct doctrine. This is true, because the nature of the relation of principal and agent is such that proof of its existence necessarily shows that the person against whom the claim is asserted has made the accord and satisfaction his own.

In the case in hand the express company was not an agent of the railroad company. It was its indemnitor. This does not weaken the defence. The express company is bound by contract to answer for just such damages as these. As the plaintiff is no party to this contract, and so is not bound by it, the performance by the express company of its obligation goes in exoneration of the railroad company. To use the

language of Baron Parke, its payment is "for the defendant and on its account," since the plaintiff's right of action against the railroad company is one of which nothing but his own consent can deprive him. Moreover, the plea recognizes and adopts the settlement. There are present here original authority; action beneficial to the defendant, founded on a new consideration; ratification and retention by the plaintiff of the payment received in satisfaction. These are the elements that bring a case within the rule. It follows that the defence of accord and satisfaction was sustained by the proof, and that it was error to refuse to direct a verdict for the defendant.

The judgment is reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Van Syckel, Dixon, Collins, Fort, Hendrickson, Bogert, Adams, Vredenburgh, Voorhees. 10.